ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 1 2 2007
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | COMPLAINT |
| vs. | Civil Action No. |
| TERAX ENERGY, INC., WESTAR OIL, INC., MARK ROY ANDERSON, and LINDA CONTRERAS, | 3 07 CV 1554 - M |
| Defendants, | |
| THE SEPTEMBER TRUST, And CAMDEN HOLDINGS, INC. | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission alleges:

## SUMMARY

1. In April 2007, Mark Roy Anderson, a convicted felon and disbarred lawyer, obtained undisclosed control of Terax Energy, Inc. ("Terax"), a publicly traded oil and gas company purportedly headquartered in Dallas. Terax's sole and nominal officer and director is Linda Contreras, Anderson's 26 year-old office assistant.

2. Under Anderson's control, Terax has issued several materially false and misleading press releases announcing, among other things, that: (a) the company intended to extend its leases and rework its wells in Erath County, Texas, resulting in expected net revenues from the wells of $750,000 per month; (b) Terax's controlling shareholder had executed a $175 million financing agreement on behalf of Terax with an unnamed New York energy lender; and (c) Terax had acquired controlling interest in a publicly-held Canadian oil company.

1

3.   At the time the Terax press releases were issued, the Erath County leases had been placed into receivership by a state court judge and the lessor had advised Terax that he was terminating the leases; the New York lender had never committed to the financing; and the acquisition of the Canadian company did not close because Anderson stopped payment on a $2 million check to a Canadian brokerage firm that brokered the deal.

4.   The price and trading volume of Terax stock, which trades on the OTC Bulletin Board, increased significantly after the press releases were issued.

5.   Anderson and Contreras also caused Terax to issue 500,000 "free trading" shares to two entities controlled by Anderson, and 500,000 "free trading" shares to an unknown individual. One of Anderson's entities has sold approximately 5,000 shares of these shares, as well as 12,000 shares purchased at $.38 per share, into the inflated market for approximately $56,000. The remaining shares controlled by Anderson have been converted into street name and have a current market value of approximately $1.3 million.

6.   In the months prior to obtaining control of Terax, Anderson fraudulently raised approximately $1 million from about 30 investors through a purported "pre-IPO" private offering of stock in Westar Oil, Inc., a Nevada corporation he controls. Among other things, Anderson represented that Westar had discovered a huge oil well in Nevada, that the company had filed an SB-2 registration statement with the Commission, and that the stock would soon begin trading at $10 to $20 per share. These claims were false. Anderson is now lulling the Westar investors with false claims that they will profit from Westar's affiliation with Terax through a conversion of Westar stock into "free trading" Terax shares.

7.   By engaging in the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert, have engaged in, and unless enjoined will continue to engage in transactions, acts, practices and courses of business that constitute violations of Sections 5(a),

5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and of Rule 10b-5 [17 C.F.R. § 240.10b-5], promulgated thereunder.

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], to preliminarily and permanently enjoin Defendants from future violations of the federal securities laws.

9. This Court has jurisdiction over this action, and venue is proper, pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10. Defendants, directly or indirectly, made use of the means or instruments of transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. Certain of the transactions, acts, practices and courses of business alleged herein took place in the Northern District of Texas.

## DEFENDANTS AND RELIEF DEFENDANTS

11. Terax Energy, Inc. is a publicly traded Nevada corporation purportedly engaged in oil-and-gas exploration and development. Terax's public reports state that it maintains its principle office in Dallas, Texas; however, Terax is operated by Anderson and Contreras from Westar's offices in Beverly Hills, California. Terax has filed reports with the Commission under Section 15(d) of the Exchange Act, and its common stock is traded on the OTC BB under the symbol TEXG.OB.

12. Westar Oil, Inc. is a privately held Nevada corporation, purportedly engaged in oil-and-gas exploration and development. Westar has offices in Beverly Hills, California. Anderson is its sole officer and director.

13. Mark Roy Anderson, 53, of Los Angeles, California, is an undisclosed control person of Terax. In 1994, Anderson was convicted of mail fraud and sentenced to seven years imprisonment. Formerly a Nevada attorney, Anderson was disbarred in 1993 based on the activities underlying his criminal conviction. In 1986, the State of California's Department of Corporations enjoined Anderson from future violations of California's securities laws.

14. Linda Contreras, 26, of Los Angeles, California, is employed as Anderson's assistant at Westar's offices in Beverly Hills. She is also the nominal CEO and sole director of Terax.

15. The September Trust is a Nevada trust controlled by Anderson.

16. Camden Holdings, Inc. is a California corporation controlled by Anderson.

## THE FRAUDULENT SCHEME

### *Westar Private Offering*

17. In late 2006, Anderson told a Dallas resident, DeWitt Knox, about a "pre-IPO" investment opportunity in Westar. Anderson gave Knox a Westar private placement memorandum ("PPM") dated January 15, 2007, that sought to raise $5 million from the sale of five million shares of common stock. The PPM stated generally that Westar would engage in oil-and-gas operations.

18. On January 16, 2007, Anderson provided more information about the offering in an email to Knox. Anderson represented the following: (a) the private offering of Westar shares is a pre-IPO deal; (b) the public filing is set for three weeks from today; (c) the pricing is set for $10; (e) the company is currently drilling a "huge play" in Railroad Valley, Nye County,

Nevada; (f) great gas showings, logs are incredible; (g) the company owns 26,000 acres and the wells; (h) Westar expects to have first well on line in about five weeks, with about 1200 barrels per day production per well; (i) we have staked out 14 wells locations....; and (j) the deal is going to be big pop at a 10 to 1 jump.

19.     Anderson told Knox that he would receive 200,000 shares if he could secure $1 million in investments from "friends and family." Knox sent Anderson's January 16 email and the PPM to approximately 100 friends and relatives. By March 2007, approximately 30 of Knox's friends and relatives, most of whom live in Texas, invested a total $1,030,000 in return for 1,030,000 shares of the common stock of Westar (collectively the "Texas investors"). Five of the original Texas investors, however, later requested and received a refund of the $170,000 they had invested.

20.     During and after the solicitation, Anderson made additional representations, which Knox forwarded to the Texas investors or used to prepare his own emails. Anderson repeatedly boasted about the Railroad Valley well and offered various excuses for the continued delay of the public offering:

> (a) The initial tests on Westar's Railroad Valley well indicated a "major discovery" that would add at least $10 to the company's current share price valuation. Westar was therefore postponing its offering for a few weeks, to have the lease valued.
>
> (b) We are not filing an S1, which takes up to 8 weeks. We are filing under SB2. Which is much, much faster, for smaller companies, they really do move it along really fast.
>
> (c) We are waiting to get two third parties (valuations of the lease) as soon as we get those we will have the attorneys do everything so that we are public....All is good....That is the way things are when you are dealing with auditors, lawyers and the SEC.
>
> (d) I have done over 400 public filings...Always something that needs to be added. Then we wait for the SEC to give their comments if any. Our Westar deal is no exception. The company is doing great...There is ZERO debt...As soon as I get the last (supposed third lease valuation recently required by the SEC) report I will move it along as fast I can...If I do not have the report by Monday, I will either remove that

property from the filing, so that there is no delay or I will file without it, or I will roll it into another public company that I already own.

21. Anderson's representations to Knox and the Texas investors were materially misleading. Westar has never requested authority to lease or operate property for oil and gas exploration in the Railroad Valley area. Westar has never filed any reports with Bureau of Land Management of the U.S. Department of Interior or the Nevada Commission on Mineral Resources claiming oil and gas production. Westar has never made any SEC filings and has not completed the represented IPO.

### *Anderson Acquires Control of Terax*

22. On May 1, 2007, Contreras, Terax's new CEO, filed a Form 8-K report with the SEC, announcing that Terax had agreed to sell 55% of its issued and outstanding shares to Westar for $0.21 a share.

23. While the Form 8-K filing, and all subsequent SEC filings by Terax, indicates that Linda Contreras is the CEO of Terax, none of Terax's public filings have disclosed Anderson's control over or affiliation with Terax.

24. Since the acquisition of Terax by Westar, Anderson has given instructions to Terax's stock transfer agent, negotiated an employment agreement with a potential employee, attempted to renegotiate leases, and negotiated the potential acquisition of a Canadian company. Terax is operated out of Westar's offices in California.

25. On June 8, Terax issued a press release claiming that Westar had acquired the senior debt position in the amount of $3 million, and that Westar intended to convert the debt into stock of Terax at a value of $6.75 per share. The press release also stated that Westar intended to enter into a share exchange agreement with Terax in which Westar shares would be valued at $24.50 and Terax shares would be valued at $6.75. Under this arrangement, Westar shareholders would receive four shares of Terax stock for each Westar share.

26.     In an email distributed to the Westar private placement investors in June 2007, Anderson advised that Westar was merging with Terax, and that an offering would commence on Friday, June 28, 2007, for one million shares at $24.50. According to Anderson, the investors would be able to sell their Westar shares and acquire Terax shares. In later emails, Anderson advised that the Terax shares to be acquired by the Westar investors could be freely traded.

27.     To date, however, the Westar investors have not received any shares in Terax.

### False and Misleading Press Releases and Form 8-K

28.     On June 8, 2007, Terax issued a press release announcing it was extending its leases in Erath County, Texas, and that it expected to re-establish production from the six wells within 30 days, and generate an expected net cash flow in excess of $750,000 per month. This release was materially misleading, because it did not disclose that the following had occurred before the release was issued:

> (a)     On June 1, 2007, the Erath County lessor gave notice he was terminating Terax's leases because of its failure to pay royalties, and that he had locked Terax out of the well sites.
>
> (b)     On June 6, 2007, an Erath County court appointed a receiver over the leases, because multiple creditors had asserted claims and liens totaling $3.6 million, which exceeded the value of the leases.

29.     Prior production from the Erath County wells does not support the $750,000 monthly net cash flow projection. In fact, Terax's SEC reports and its production reports to the Texas Railroad Commission show it operated the wells for a few months in the summer of 2006 and produced only about $100,000 worth of oil and gas, before being shut in.

30.     On June 22, 2007, Terax issued a release claiming that an unidentified New York-based energy lender had agreed to provide $175 million in financing to "Westar Oil." This release was misleading because:

> (a) The lender had not entered into a definitive lending agreement, but instead only offered to consider providing $175 million of senior secured debt.

7

(b) The lender's offer to consider entering into a loan agreement had expired on June 18, 2007 (before the release was issued) after the offer was not accepted and Westar had failed to pay the required $50,000 non-refundable deposit.

31. On July 25, 2007, Terax issued a press release claiming it had acquired a controlling interest in Truestar Petroleum Corporation, a Canadian firm engaged in oil-and-gas exploration and development, which is listed on the Canadian TSX Venture Exchange. Neither Terax nor Westar, however, ever acquired a controlling interest in Truestar. On July 20, 2007, a Canadian broker-dealer acquired 17,869,000 Truestar shares in a Westar account opened by Anderson. On July 25, the Canadian broker-dealer demanded payment. Anderson first misrepresented that Westar had wired the money to the broker-dealer; subsequently he sent a $2 million check to the broker-dealer, but stopped payment on the check. When the broker-dealer learned that Anderson had stopped payment on the check, he liquidated the position on the open market.

32. On July 30, 2007, Terax republished the press releases of June 8 and 22, 2007, by incorporating them into a Form 8-K filing with the Commission that was signed by Contreras. The filing did not correct, revise, or update the releases. Terax, therefore, again failed to disclose that: (a) the lessor had given notice of the termination of its Erath County leases; (b) the lessor had locked Terax off of the lease; (c) the leases were in receivership; (d) Terax had not re-worked and re-established production on its Erath County leases; (e) Terax did not have an $175 million loan agreement; and (f) Terax had not acquired a controlling interest in Truestar.

33. Additionally, the July 2007 filing advised that Westar had designated Contreras as Terax's sole director and CEO, and that, "The Company (Terax) and the Purchaser (Westar) are unaware of any other arrangements or groups regarding control of the Company or election of directors."

34. Anderson knew that the Terax press releases and Form 8-K described above were materially false and misleading. Anderson, as the undisclosed control person of Terax, caused the issuance of the material false and misleading information into the market, and has not corrected the information despite having a duty to do so. Anderson sold shares of Terax with knowledge that materially false and misleading information about the company was in the public market.

### *Market Impact*

35. During the three month's prior to Westar's May 1, 2007 acquisition of control of Terax, Terax stock traded in the $0.20 to $0.40 range, on average monthly volumes of 76,000 shares or less.

36. Within a week of the May 1 Form 8-K filing announcing Westar's acquisition of control, the price reached as high as $2.50 on a volume of 912,700 shares. For the month of May, the stock price reached a high of $4.38, on an average daily volume of 348,500 shares and an average price of $1.50.

37. The trading volume and price continued to increase in June 2007. Subsequent to the issuance of the misleading June 8 release announcing the share exchange agreement and the plans to resume production on the Erath County leases, the volume of trading in Terax's common stock soared to 1,359,600, and the closing price was $2.65. The stock continued to trade in the $1.80 to $3.00 range through June 21, 2007. On June 21, 2007, the trading volume was 104,400, and the closing price was $2.83. On June 22, 2007, after Terax announced $175 million in senior debt financing, the trading volume for that day increased to 654,800, and the closing price increased to $4.02. Terax's stock reached an intra-day high of $4.88 on June 25, 2007, equating to a market capitalization of about $18 million.

38. Through July 2007, the volume for Terax common stock dropped generally into the tens of thousands of shares per day, but the closing price generally remained at $3.00 or above. On Wednesday, July 25, 2007, however, after Terax issued the release falsely claiming it had made open market purchases of a controlling interest in Truestar, 32,100 shares of Terax stock traded hands, to close at $3.15.

39. While the company issued only one press release during the month of August (on August 24 regarding its intended name change), its stock has traded at a high of $3.03, on an average volume of 39,500 shares. On Friday, August 31, 2007, Terax closed at $2.65, on a volume of 16,000.

### *Trading in the September Trust Account*

40. On May 2, 2007, the day after Terax disclosed the acquisition of control by Westar, the September Trust brokerage account purchased 12,000 shares of Terax at approximately $.39 per share. On June 22, 2007, after Terax issued the misleading press releases of June 8 and 22, 2007, the September Trust account sold the 12,000 shares at $4.00 per share, realizing a profit of approximately $41,000. The September Trust account sold an additional 5,250 shares of Terax stock, as detailed in paragraph 44, below.

### *Terax's Unregistered Stock Issuance and Distribution*

41. Terax's transfer agent records reflect that on June 7, 2007, Contreras delivered a letter and corporate resolution, both of which she signed as a director of Terax, authorizing the issuance of 2,460,000 "free trading" shares to Westar pursuant to a Form S-8 registration statement filed in January 2008." Pursuant to her instructions, a certificate representing 2,460,000 shares was delivered to Westar's offices in California. However, the S-8 registration statement, cited by Contreras' letter, did not cover the shares issued to the September Trust or Camden Holdings, and therefore those shares were not, in fact, free trading shares.

42. Two weeks later, on June 21, Contreras returned the certificate informing the transfer agent that the share certificate was erroneously issued to Westar, and requested that it issue 300,000 "free trading" shares to the September Trust and 200,000 "free trading" shares to Camden Holdings, both pursuant to the S-8 filing.

43. On June 25, 2007, Anderson deposited the Camden Holdings certificate into a brokerage account he controls, and the certificate has been converted into street name. Similarly, on June 25, 2007, the September Trust certificate was deposited into a brokerage account of the same name and converted to street name. On August 15 the account sold 5,250 shares of Terax at approximately $3 per share for $15,740.

44. On August 6, 2007, Contreras instructed the transfer agent to issue 500,000 "free trading" shares in the name of a Dallas resident. On August 24, 2007, the shareholder returned the certificate to the transfer agent with instructions to cancel and reissue the shares in the name of an individual who, according to the shareholder list, resides in Hong Kong. The status of these shares is unknown.

**FIRST CLAIM**
*Violations of Section 17(a) of the Securities Act*
[Against Defendants Terax, Anderson and Westar]

45. Plaintiff incorporates paragraphs 1 through 44 of this Complaint by reference.

46. The Defendants, directly or indirectly, singly or in concert with others, in connection with the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

47. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in paragraphs 1 through 44 above.

48. With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, the Defendants were negligent in their actions regarding the representations and omissions alleged herein. With respect to violations of Section 17(a)(1) of the Securities Act, the Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

49. By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM**
*Violations of Section 10(b) of the Exchange Act and Rule 10b-5*
[Against Defendants Terax, Anderson and Westar]

50. Plaintiff incorporates paragraphs 1 through 44 of this Complaint by reference.

51. The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

52. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in paragraphs 1 through 44 above.

53. The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

54. By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM
*Violations of Section 5(a) and 5(c) of the Securities Act*
[Against Defendants Terax, Anderson and Contreras]

55. Plaintiff incorporates paragraphs 1 through 44 of this Complaint by reference.

56. Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

57. As described in paragraphs 1 through 44, the Terax securities have been offered and sold to the public through a general solicitation of investors. No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.

58. By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM
### Claim Against the Relief Defendants
### As Custodians of Investor Funds

59. Plaintiff incorporates paragraphs 1 through 44 of this Complaint by reference.

60. As set forth in this Complaint, Relief Defendants have received funds and property from one or more of the Defendants, which are the proceeds, or are traceable to the proceeds, of the unlawful activities of Defendants as alleged above.

61. Relief Defendants have obtained the funds and property alleged above as part of and in furtherance of the securities violations alleged in paragraphs 1 through 44 and under the circumstances in which it is not just, equitable or conscionable for them to retain the funds and property. As a consequence, Relief Defendants The September Trust and Camden Holding, Inc., have been unjustly enriched.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

### I.

Temporarily, preliminarily and permanently enjoin: Defendants Terax and Anderson from violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder; Defendant Westar from violating Sections 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder; and Defendant Contreras from violating Sections 5(a) and 5(c) of the Securities Act.

## II.

Enter an Order *instanter* freezing the assets of Defendants Terax, Anderson and Westar, and Relief Defendants, and directing that all financial or depository institutions comply with the Court's Order.

## III.

Order *instanter* that Defendants and Relief Defendants shall file with the Court and serve upon Plaintiff Commission, no later than 72 hours after notice of this Order, an accounting, under oath, detailing all of their assets and all funds or other assets received from investors and from one another.

## IV.

Order *instanter* that Defendants and Relief Defendants be restrained and enjoined from destroying, removing, mutilating, altering, concealing or disposing of, in any manner, any of their books and records or documents relating to the matters set forth in the Complaint, or the books and records and such documents of any entities under their control, until further order of the Court.

## V.

Order that the parties may commence discovery immediately, and that notice periods be shortened to permit the parties to require production of documents, or the deposition of any party or party-representative, on 72 hours notice.

## VII.

Order the Defendants to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus prejudgment interest on that amount, and order the Relief Defendants to disgorge an amount equal to the illegally obtained investors funds they received from the Defendants, plus prejudgment interest on that amount.

## VIII.

Order civil penalties against the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

## IX.

Bar Defendant Anderson from participating in any offering of penny stock, pursuant ot Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g) and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), for the violations alleged herein.

## X.

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], prohibit Defendant Anderson from acting as an officer or director of any issuer that has a class of securities registered pursuant to Sections 12(b) or 12(g) of the Exchange Act [15 U.S.C. §§ 78l(b) or 78l(g)] or that is required to file reports pursuant to 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## XI.

Order such further relief as this Court may deem just and proper.

September 12, 2007                                  Respectfully submitted,


_____
J. KEVIN EDMUNDSON
Texas Bar No. 24044020
STEPHEN J. KOROTASH
Oklahoma Bar No. 5102
TOBY M. GALLOWAY
Texas Bar No. 00790733
United States Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1411 (JKE)
(817) 978-6490 (SJK)
(817) 978-4927 (Facsimile)
Attorneys for Plaintiff

# CIVIL COVER SHEET  3 07 CV 1554-M

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS

Terax Energy, Inc., Westar Oil, Inc., Mark Roy Anderson, Linda Contreras, The September Trust, and Camden Holdings, Inc., Defendants; and, The September Trust and Camden Holdings, Inc., Relief Defendants.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
J. Kevin Edmundson and Stephen J. Korotash
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
(817) 978-1411/6490

ATTORNEYS (IF KNOWN)

RECEIVED SEP 1 2 2007
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 156
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copy rights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395FF)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 810 Selective Service
- ☒ 850 Securities Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (Specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

## VI. CAUSE OF ACTION
CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY):
Brief Description of cause: Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a), 77e(a), 77e(c)] and Section 10(b) Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 9/11/07
SIGNATURE OF ATTORNEY OF RECORD /s/ Steve Korotash

FOR OFFICE USE ONLY
Receipt # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____